```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                      EASTERN DIVISION

THERESA LANGDON,

              Plaintiff,
     vs.                              Civil Action 2:10-CV-602
                                      Judge Frost
                                      Magistrate Judge King
MICHAEL J. ASTRUE, Commissioner
of Social Security,

              Defendant.
```

### REPORT AND RECOMMENDATION

This is an action instituted under the provisions of 42 U.S.C. §§405(g), 1383 for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for disability insurance benefits and supplemental security income. This matter is now before the Court on plaintiff's *Statement of Errors*, Doc. No. 16, and on the Commissioner's *Memorandum in Opposition,* Doc. No. 22.

Plaintiff Theresa Langdon filed her applications for benefits on February 23, 2007, alleging that she has been disabled since January 1, 2002.[1] The applications were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge. On September 23, 2009, plaintiff, represented by counsel, appeared and testified at a administrative hearing, as did Ronald Kendrick, M.D., who testified as a medical expert, and W. Bruce Walsh, Ph.D., who testified as a vocational expert.

In a decision dated November 17, 2009, the administrative law judge found that plaintiff suffers the severe impairments of status post disc protrusion at L4-L5 with laminectomy; status post recurrent disc

---

[1] *Plaintiff's Statement of Specific Errors* refers to an onset date of January 1, 1997. *Plaintiff's Statement of Specific Errors*, p. 1.

protrusion with laminectomy and fusion at L4-S1; minor multi-level thoracic level disc protrusions; and headaches. However, the administrative law judge also found that these conditions, whether considered singly or in combination, neither meet nor equal a listed impairment. Rather, the administrative law judge found, plaintiff has the residual functional capacity to perform a reduced range of sedentary work. Specifically, plaintiff could lift 10 pounds occasionally and 5 pounds frequently, sit for one hour at a time for six hours total in an eight-hour workday, and stand/walk for thirty minutes at a time for two hours total in an eight-hour workday. In addition, plaintiff could only occasionally bend, stoop, kneel, and crawl and could only occasionally climb stairs. Plaintiff would be precluded from climbing ladders and from working with dangerous machinery or around unprotected heights. Relying on the testimony of the vocational expert, the administrative law judge found that this residual functional capacity permitted the performance of jobs that exist in significant numbers in the national economy. The administrative law judge therefore concluded that plaintiff is not disabled within the meaning of the Social Security Act. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on May 7, 2010.

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Secretary of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.,* 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

Plaintiff was 33 years of age on the date the administrative law judge issued his decision. *Page ID#* 50, 172.  Plaintiff has a "limited" education, having attended school through the eleventh grade. *Page ID#* 168-71, 183. She has past relevant work experience as a cashier, as a cook/food preparer, and as a waitress. *Page ID#* 177, 185-92.

William Zerick, M.D., a neurosurgeon, treated plaintiff from August 2002 through June 2009 for complaints of low back pain with numbness in the lower extremities. *Page ID#* 302-09, 384-95.  A June 2003 MRI of the lumbar spine showed a 7mm central disc protrusion at the L4-5 level, without central canal stenosis or foraminal narrowing. *Page ID#* 193-94. A 3mm disc protrusion, which was touching the spinal cord, was

apparent at T10. *Id.* Plaintiff underwent a right-sided discectomy at the L4-5 level on June 30, 2003. *Page ID#* 195-205.

On March 21, 2005, an MRI of plaintiff's lumbosacral spine showed the previous L4-5 discectomy, as well as intervertebral osteochondrosis at L5-S1. No recurrent disc herniations or neural encroachments were demonstrated. *Page ID#* 245.

Plaintiff was involved in a motor vehicle accident on July 4, 2005, and diagnosed with a lumbar strain. *Page ID#* 255-58. An x-ray of plaintiff's lumbosacral spine was negative. *Page ID#* 246.

An August 2005 MRI of plaintiff's thoracic spine showed mild disc disease at T10-11. There were no fractures and the spinal cord was normal. *Page ID#* 247. The lumbosacral spine showed a 5mm recurrent disc herniation at the L4-5 level, including abnormal signal intensity abutting on the anterior contour of the thecal sac. *Page ID#* 248.

In November 2005, Dr. Zerick noted that straight leg raising on the right produced radicular leg pain, although range of motion of the hip was full and nonpathological. Dr. Zerick observed no aberrant pain behavior. *Page ID#* 307. Plaintiff was prescribed a TENS unit for her low back pain in December 2005. *Page ID#* 249.

Larry T. Todd, Jr., D.O., performed a consultative orthopedic evaluation in January 2006. Dr. Todd reported positive straight leg raising on the right and noted that the recent MRI had shown a recurrent herniation, for which plaintiff was scheduled for surgery by Dr. Zerick. *Page ID#* 259-60.

Dr. Zerick performed a "redo" discectomy on October 5, 2006. *Page ID#* 264-66. In November 2006, Dr. Zerick referred plaintiff to her

4

chiropractor, Richard Rodgers, II, D.C., for chiropractic treatment. *Page ID#* 303.

A post-operative MRI taken that same month showed the fusion to be in good alignment. *Page ID#* 267.  In February 2007, Dr. Zerick noted that plaintiff was having no leg pain but continued with radiating back pain.  She expressed uncertainty that she could return to work.  Dr. Zerick prescribed physical therapy and renewed plaintiff's medications. *Page ID#* 302.

Plaintiff attended six sessions of physical therapy from February 2007 through May 2007. *Page ID#* 310-12, 322-29.  At the last session, the physical therapist noted that plaintiff was "unable to tolerate therapeutic exercise for core stability muscle re-education. [Plaintiff] tried using her personal TENS unit during and after the exercises but pain level was still unbearable 8/10 by evening and during the night." *Page ID#* 328.  Plaintiff and the physical therapist "agreed that this program was not an option for her at this time." *Id*.

In April 2007, a state agency physician, Jerry McCloud, M.D., reviewed the record and opined that plaintiff had the residual functional capacity to lift and/or carry and push and/or pull up to twenty pounds occasionally and up to ten pounds frequently; she could stand and/or walk about six hours in an eight-hour workday and could sit about six hours in an eight-hour workday.  She could occasionally climb ramps and stairs, stoop, kneel and crawl but could never crouch or climb ladders, ropes, or scaffolds. *Page ID#* 313-20.  In October 2007, another state agency physician affirmed Dr. McCloud's assessment. *Page ID#* 351.

On May 2, 2007, plaintiff underwent a pain management consultation by Lisa Choung, M.D., upon referral from Dr. Zerick. *Page*

5

ID# 330-32. Plaintiff described severe, constant low back pain that radiated to her right hip and leg. Pain in the right leg followed the distribution of the L5 nerve. *Page ID#* 330. Examination revealed decreased sensation to light touch in the anterior lower extremity. Straight leg raising was negative bilaterally. *Page ID#* 331. Dr. Choung diagnosed postlaminectomy pain syndrome and right lower extremity pain, recommended lumbar epidural steroid injections and prescribed a long acting opioid analgesic. *Page ID#* 332.

A May 2007 MRI of the lumbosacral spine showed evidence of the prior fusion surgery, with plates and screws through the L4 and L5 vertebrae, as well as a Type II arachnoiditis. *Page ID#* 337. X-rays of the right hip taken that same day were negative. *Page ID#* 338.

Plaintiff was seen by Leslie Bright, a certified nurse practitioner (CNP) at the American Health Network in July 2007 for unresolved back pain. Plaintiff requested a letter confirming her disability, although Ms. Bright referred plaintiff to Dr. Zerick for that purpose. *Page ID#* 343-44.

Plaintiff was seen by Brent Nimeth, M.D., at the American Health Network on July 9, 2007. Dr. Nimeth reported that plaintiff's pain was alleviated by Percocet, but that the Neurontin made her groggy. On clinical examination, Dr. Nimeth noted tenderness and muscle spasm with decreased range of motion of the lumbar spine. Straight leg raising was negative. *Page ID#* 341-42.

In August 2007, Chiropractor Rodgers opined that plaintiff had limited motion in her joints and spine, and could use only her arms for functional tasks. *Page ID#* 333.

On October 24, 2007, Sarah Blake, M.D., a pain management consultant, examined plaintiff for complaints of headaches, weakness, numbness, and leg cramps and spasms. *Page ID#* 376-77. Dr. Blake diagnosed lumbar degenerative disc disease and lumbar radiculitis and recommended that plaintiff continue with physical therapy in conjunction with opioid pain medications and, possibly, facet injections.

A December 2007 MRI of plaintiff's lumbar spine showed a mild broad-based disc bulge at L3-L4, which mildly narrowed both foramen and mildly flattened the ventral thecal sac without significant central stenosis. Mild bilateral ligamentum flavum thickening was also noted. *Page ID#* 391-92. An MRI of the thoracic spine revealed multiple small disc protrusions at T6-T7, T9-Tl0 and T10-11 which abut and mildly deform the cord. *Page ID#* 393-94.

On January 22, 2008, Dr. Zerick explained that, because of plaintiff's complaints of leg and back pain, "the only thing to offer" plaintiff would be extending the decompression, fixation and fusion further up her lower back, and removing and replacing the hardware further down her lower back. *Page ID#* 390. The recommended surgery could not be performed at that time, however, because of plaintiff's pregnancy. *See Page ID#* 356, 389.

Plaintiff saw Chiropractor Rodgers in May and June 2009 for manipulation and electrical stimulation of the lower back. The chiropractor reported severe spasms of the low back with severe tenderness and reduced range of motion. *Page ID#* 396-405.

A June 2009 MRI of plaintiff's lumbar spine revealed stable fusion and disc space fusion at L4-L5 with no spinal stenosis. However, the fusion hardware "mildly protrudes into the anterior aspect of the

7

right neural foramen resulting in mild foraminal narrowing on the right." There was disc bulge and facet joint arthropathy at L3-L4 with resulting mild bilateral foraminal narrowing, and disc bulge and left paracentral protrusion at T10-T11 resulting in moderate spinal stenosis. "Overall the lumbar spine is stable." *Page ID#* 385-86.

On September 9, 2009, a certified nurse practitioner examined plaintiff in advance of the L3-4 fusion. According to the nurse practitioner, plaintiff could lift 10 pounds occasionally, less than 10 pounds frequently, and 20 pounds infrequently. Standing and walking were limited to less than one hour and sitting was limited to 2 hours. Postural activities could be performed only rarely, and plaintiff would require additional breaks and a sit/stand option. *Page ID#* 406-07.

Plaintiff testified at the administrative hearing that she required two to three months to recover from her first back surgery in 2003. *Page ID#* 68-69. Even then, she still had back pain and there were times when she could not even get out of bed. *Page ID#* 69. She described her pain as sharp stabbing pains, shooting down her back, running down through her buttocks, down her leg, making her leg go numb. *Id.* In 2005, she had to "have help doing pretty much everything . . . . help going grocery shopping . . . . help cleaning [her] apartment . . . . help taking care of [her] kid"." *Page ID#* 78. She estimated that in 2005 she could sit for no longer than 90 minutes before she had to stand; she could stand for about one hour. *Page ID#* 79.

The 2006 surgery did not alleviate her symptoms. *Page ID#* 72. She was told by two other back surgeons"that the screws going through my spine look like they're coming out, sticking out through my spine in the

8

back. He, they seem to think [her doctor] might have took, put too long a screws in there." *Page ID#* 73.

A TENS unit relieved some of her pain but the pain resumed as soon as she removed the unit. *Page ID#* 76. She used the device at least ten hours per day. *Id.* She required her husband's help in caring for her baby in 2008. *Page ID#* 81.

A third back surgery was scheduled for the month after the administrative hearing. *Page ID#* 65.

Dr. Kendrick, the medical expert,[2] testified that, based on his review of the medical record, a disc protrusion at L4-5 had required a laminectomy. *Page ID#* 82. The disc thereafter re-herniated, however, requiring a laminectomy and fusion from L4 to S1. *Id.*  The record documents minor multi-level disc protrusions in the thoracic spine without evidence of cord compression. *Id.* Dr. Kendrick also initially testified that plaintiff's condition neither met nor equaled a listed impairment. *Id.* Prior to 2005, according to Dr. Kendrick, plaintiff could lift and/or carry ten pounds occasionally and five pounds frequently, could sit for an hour at a time up to six hours, could stand and/or walk for 30 minutes at a time for up to two hours, and could bend, kneel, stoop, crawl and climb stairs occasionally.  She could never climb ladders or work in high places or around dangerous machinery. *Page ID#* 83.  That residual functional capacity would have remained the same, other than for the few months recovery period, after plaintiff's 2006 surgery.  *Page ID#* 83-84.

---

[2] Because the challenges raised by plaintiff do not implicate the vocational testimony, the Court will not summarize the testimony of the vocational expert.

On cross-examination, however, Dr. Kendrick testified that plaintiff's condition "could have met" the requirements of Listing 1.04A until the time of her 2006 surgery. After that surgery, however, her condition would no longer meet Listing 1.04A. *Id.*

Dr. Kenrick also testified that he took plaintiff's pain into account in rendering his opinions. *Page ID#* 87.

In her *Statement of Errors*, plaintiff contends, first, that the administrative law judge erred at Step 3 of the sequential evaluation by finding that she did not meet the criteria for disorders of the spine set forth in Listing 1.04A, at least for a closed period ending with plaintiff's surgery in October 2006. Listing 1.04A mandates a finding of disability under the following circumstances:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.04A.

Referring to Dr. Kendrick's testimony, the administrative law judge determined that plaintiff's back impairment neither met nor equaled Listing 1.04A. *Page ID#* 45. The administrative law judge specifically found that, although Dr. Todd's January 2006 examination documented decreased reflexes, decreased sensation, and positive straight leg raising prior to the 2006 surgery, those symptoms had resolved by the time of Dr. Choung's examination in May 2007. *Id.*

However, as plaintiff notes, the record documents not only Dr. Todd's findings, but also a 5mm recurrent disc herniation at the L4-5 level, including abnormal signal intensity abutting on the anterior contour of the thecal sac. *Page ID#* 248. Moreover, Dr. Kendrick appeared to concede on cross-examination by plaintiff's counsel at the administrative hearing that plaintiff's back impairment "could have met" the elements of Listing 1.04A up until the time of her second surgery in October 2006. *See* Page ID # 85.  The administrative law judge did not appear to consider this testimony which is, at a minimum, ambiguous on the issue of a possible closed period of disability.

Under these circumstances, the Court concludes that the matter must be remanded to the Commissioner to determine whether Listing 1.04A was met during a closed period beginning on plaintiff's alleged date of onset of disability, *i.e.*, January 1, 2002, and ending following the recovery period associated with plaintiff's second spinal surgery on October 5, 2006.[3]

It is therefore **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** to the Commissioner of Social Security for further proceedings.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection

---

[3] Plaintiff also challenges the administrative law judge's credibility determination.  In light of the recommended disposition of the matter, consideration of plaintiff's alternative argument is unnecessary.

11

thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. See *Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

Date: July 27, 2011                                  *s/Norah McCann King*
                                                    Norah McCann King
                                                    United States Magistrate Judge